# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS (EL PASO)

| | | |
|---|---|---|
| In re: | § | **Chapter 11 (Subchapter V)** |
| | § | |
| **Flix Brewhouse NM LLC,** | § | **Case No. 21-30676 (HCM)** |
| | § | |
| Debtor. | § | |
| | § | |

### FLIX BREWHOUSE NM LLC'S SUBCHAPTER V PLAN OF REORGANIZATION

Date: December 9, 2021

*Flix Brewhouse NM, LLC*

By:  /s/ Rachael L. Smiley
　　　　　One of its Attorneys

Rachael Smiley (State Bar No. 24066158)
**FERGUSON BRASWELL FRASER KUBASTA PC**
2500 Dallas Pkwy
Plano, TX 75093
Telephone:  972.378.9111
Facsimile:  972.378.9115
rsmiley@fbfk.law

*Co-Counsel to the Debtor*

By:  /s/ Jonathan Friedland
　　　　　One of its Attorneys

Jonathan Friedland (*admitted pro hac vice*)
Jack O'Connor (*admitted pro hac vice*)
Mark Melickian (*admitted pro hac vice*)
**SUGAR FELSENTHAL GRAIS & HELSINGER LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone: 312.704.9400
Facsimile:  312.704.9400
jfriedland@sfgh.com
joconnor@sfgh.com
mmelickian@sfgh.com

*Co-Counsel to the Debtor*

## INTRODUCTION

You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. To assist you in your review, please note that a list of definitions and a section of frequently asked questions appear at the end of this document.

Capitalized terms used in this chapter 11 plan and not otherwise defined shall have the meanings set forth in **Article 1** of the Plan.

The Debtor proposes this Plan for the resolution of outstanding Claims against, and Interests in, the Debtor. The Debtor is the proponent of the Plan within the meaning of Bankruptcy Code § 1189(a).

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN. IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, YOU MUST DO SO BY [_____].**

**YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY [_____]. THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:**

| | |
|---|---|
| **FERGUSON BRASWELL FRASER KUBASTA PC** | **SUGAR FELSENTHAL GRAIS & HELSINGER LLP** |
| Attn: Rachael Smiley | Attn: Jonathan Friedland, Jack O'Connor |
| 2500 Dallas Pkwy | 30 N. LaSalle St., Ste. 3000 |
| Plano, TX 75093 | Chicago, Illinois 60602 |
| rsmiley@fbfk.law | jfriedland@sfgh.com |
| | joconnor@sfgh.com |

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR [_____] IN COURTROOM NO. 444 OF THE U.S. BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF TEXAS (EL PASO), 511 E. SAN ANTONIO AVE., EL PASO, TEXAS 79901, or via WebEx or telephonically at us-courts.webex.com/meet/Mott; or by dialing 650-479-3207 access code 160 357 6609#.**

Your rights may be affected by this Plan. You should consider discussing this document with an attorney.

<u>SUMMARY OF PLAN & DISTRIBUTIONS TO CREDITORS</u>

The Debtor is proposing a reorganization of the Debtor pursuant to which the Debtor emerges fully operational from bankruptcy and pays unsecured creditors 100% of their Allowed Claims. The Debtor's ability to reorganize in this fashion presumes that the Debtor prevails in its dispute with its landlord, Village @ La Orilla, LLC, over amounts due for rent during a 16-month period of the Pandemic that was subject to restrictions by order of the Governor of New Mexico. For 14 months Debtor was completely prohibited from conducting its business as a motion picture exhibitor and for two months Debtor's ability to operate was subject to severe capacity restrictions. This dispute is the subject of pending litigation.

The following tables summarize the proposed distributions to creditors under each of these options. Capitalized terms are defined in the Plan.

**Reorganization Plan**

| Class | Claim/Equity Interest | Treatment of Claim/Interest | Estimated Amount of Unpaid Allowed Claims on Effective Date | Projected Recovery Under the Plan |
|---|---|---|---|---|
| N/A | Administrative Claims | Each holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim, payment in Cash in full from the Reorganized Debtor. | tbd | 100% |
| N/A | Priority Tax Claims | Except to the extent that a holder of an Allowed Priority Tax Claim and, as applicable, the Reorganized Debtor agrees to a less favorable treatment, in full and final satisfaction, settlement, and release of and in exchange for each Allowed Priority Tax Claim, pursuant to Bankruptcy Code § 1129(a)(9), each holder of such Allowed Priority Tax Claim shall receive the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of the Effective Date and the date on which such Priority Tax Claim | None known. | 100% |

| Class | Claim/Equity Interest | Treatment of Claim/Interest | Estimated Amount of Unpaid Allowed Claims on Effective Date | Projected Recovery Under the Plan |
|---|---|---|---|---|
| | | becomes an Allowed Claim or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter). | | |
| 1 | Comerica Secured Claim | The Debtor's obligations under the Holdco Loan and the SBA 7(a) Loan shall remain in place unaffected by the Plan. The Debtor shall continue its contract payments to Comerica and Comerica shall retain its Liens. | $1,451,00 on account of the SBA Loan. The Debtor's contingent obligation on its guaranty of the Holdco Loan is $5,607,263.68. | 100% (in the form of continued performance under the terms of the loans) |
| 2 | Secured Tax Claims | Each holder of an Allowed Secured Tax Claim shall be paid in full on or about the Effective Date of the Plan | $19,017 | |
| 3 | Other Priority Claims | Each holder of an Allowed Other Priority Claim shall be paid in full on or about the Effective Date of the Plan. | None known. | 100% |
| 4 | General Unsecured Claims | Each holder of an Allowed General Unsecured Claim shall be paid in full within thirty (30) days of the Effective Date of the Plan. | $90,495 | 100% |
| 5 | Interests | holders of Interests shall retain their Interests. | n/a | n/a |

## ARTICLE 1
### DEFINITIONS

The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code apply when terms defined or construed in the Bankruptcy Code are used in this Plan. The definitions that follow that are found in the Bankruptcy Code are for convenience of reference only, and are superseded by the definitions found in the Bankruptcy Code.

1.1. **Administrative Claim:** Any cost or expense of administration of the Chapter 11 Case entitled to priority under § 507(a)(1) of the Bankruptcy Code and allowed under §§ 503(b) and 330 of the Bankruptcy Code, including without limitation, any actual and necessary expenses of preserving the Debtor's Estate, any actual and necessary expenses incurred following the filing of the bankruptcy petition by the Debtor-in-Possession, allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, the Allowed Claim of the Trustee for fees and/or reimbursements, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

1.2. **Administrative Tax Claim:** Any tax incurred pursuant to Bankruptcy Code § 503(b)(1)(B).

1.3. **Affiliate:** Shall have the meaning ascribed to it under Bankruptcy Code § 101(2).

1.4. **Allowed Claim:** a Claim:

(a) with respect to which a proof of claim has been filed with the Court within the applicable period of limitation fixed by Bankruptcy Rule 3003, in a liquidated non-contingent amount as to which no objection has been filed by Debtor prior to the applicable claim objection deadline and that is evidenced by a Proof of Claim or Interest, as applicable, timely filed by the applicable Bar Date; or

(b) scheduled in the list of Creditors prepared and filed with the Court pursuant to Bankruptcy Rule 1007(b) and is not listed as disputed, contingent, or unliquidated as to amount in the schedules or this plan, and

(c) in either case as to (a) and (b), as to which no objection to the allowance thereof has been filed within any applicable period of limitation fixed by Bankruptcy Rule 3007, this Plan or an order of the Court, or as to which any such objection has been determined by a final order or judgment which is no longer subject to appeal and as to which no appeal is pending. An Allowed Claim shall not include unmatured or postpetition interest unless otherwise stated hereafter in the Plan.

1.5. **Allowed Secured Claim**: An Allowed Claim secured by a lien, security interest, mortgage or other interest in property in which the Debtor has an interest, or which is subject to set-off under Bankruptcy Code § 553, to the extent of the value of such property securing the Allowed Secured Claim pursuant to Bankruptcy Code § 506(a) or to the extent the amount is subject to said set-off as the case may be. An Allowed Secured Claim may include post-petition interest if permitted under Bankruptcy Code § 506.

1.6. **Avoidance Actions:** Any and all avoidance, recovery, subordination, or other claims, actions, or remedies which the Debtor, the Estate, or other appropriate parties in interest have asserted or may assert under Bankruptcy Code chapter five or under similar or related state or federal statutes and common law.

**1.7.** **Ballot:** each of the ballot forms distributed to holders of Claims in Classes that are impaired under the Plan and entitled to vote to accept or reject the Plan.

**1.8.** **Bankruptcy Code:** title 11 of the United States Code, 11 U.S.C. § 101 *et seq.*, as amended from time to time, as applicable to the Chapter 11 Case.

**1.9.** **Bankruptcy Court:** the United States Bankruptcy Court for the Western District of Texas having jurisdiction over the Chapter 11 Case, and, to the extent of the withdrawal of reference under 28 U.S.C. § 157 or the General Order of the District Court under § 151 of title 28 of the United States Code, the United States District Court for the Western District of Texas.

**1.10.** **Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under § 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each as amended from time to time.

**1.11.** **Bar Date:** November 19, 2021, the date by which parties other than Governmental Units must file proofs of claim in the Chapter 11 Case.

**1.12.** **Business Day:** any day other than a Saturday, Sunday, or "legal holiday," as defined by Bankruptcy Rule 9006(a)).

**1.13.** **Cash:** cash, cash equivalents, and other readily marketable securities or instruments issued by a person other than the Debtor, including, without limitation, readily marketable direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest accrued or earned thereon.

**1.14.** **CBI:** Cinema Breweries, Inc., a wholly owned subsidiary of the Debtor's Manager, Hospitality Investors, Inc. CBI provides staff members to the Debtor under a Staffing Services Agreement dated December 29, 2017.

**1.15.** **Chapter 11 Case:** the chapter 11 case of the Debtor, proceeding under subchapter V of chapter 11 of the Bankruptcy Code, captioned "*In re Flix Brewhouse NM LLC*" and proceeding before the Bankruptcy Court under case number 21-30676 (HCM).

**1.16.** **Chapter 11 Estate of Allan L. Reagan:** The estate in the chapter 11 case of Allan L. Reagan, proceeding under case number 20-11161-TMD, pending in the United States Bankruptcy Court for the Western District of Texas.

**1.17.** **Claim:** a claim asserted against the Debtor, as defined under Bankruptcy Code § 101(5).

**1.18.** **Claims Register:** The official register of Claims maintained by the clerk of the Bankruptcy Court.

**1.19.** **Class:** A category of holders of claims or interests which are substantially similar to the other claims or interests in such class.

1.20.   **Comerica:** Comerica Bank, the Debtor's senior secured lender.

1.21.   **Confirmation:** the entry of an order by the Bankruptcy Court confirming the Plan.

1.22.   **Confirmation Date:** the date on which the Bankruptcy Court enters the Confirmation Order on the docket in the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

1.23.   **Confirmation Hearing:** The hearing to be held on _____, 20___ to consider confirmation of the Plan.

1.24.   **Confirmation Order:** an order of the Bankruptcy Court confirming the Plan under §§ 1129 and 1191 of the Bankruptcy Code.

1.25.   **Cure Claim:** a monetary Claim based on the Debtor's default under any Executory Contract or Unexpired Lease to be assumed under the Plan by the Debtor under Bankruptcy Code § 365 and calculated in according to the terms of the Plan.

1.26.   **Debtor:** Flix Brewhouse NM LLC, the debtor and debtor in possession in the Chapter 11 Case.

1.27.   **DIP Claim:** The secured, superpriority Claim held by FELLC against the Debtor for amounts loaned to the Debtor by FELLC under the DIP Loan Documents and DIP Orders to the extent that such amounts remain outstanding.

1.28.   **DIP Loan:** Amounts loaned to the Debtor by FELLC pursuant to the DIP Loan Documents and DIP Orders.

1.29.   **DIP Lender:** FELLC.

1.30.   **DIP Loan Documents:** The Debtor-in-Possession Loan Agreement and related documents approved by the Court pursuant to the DIP Orders.

1.31.   **DIP Orders:** The Interim Order (Dkt. 47) and Final Order (Dkt. 73) authorizing the Debtor to obtain the DIP Loan, use cash collateral, and determining adequate protection and superpriority claims and liens.

1.32.   **Disallowed:** with respect to any Claim, a Claim or any portion thereof that: (a) has been disallowed by a Final Order; (b) is listed in the Schedules as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely filed or deemed timely filed with the Bankruptcy Court.

1.33.   **Disputed Claim:** a Claim that is not yet Allowed.

1.34.   **Effective Date:** The date on which the Plan is effective. The Conditions Precedent to the Effective Date are provided in Section 4.1 of this Plan.

1.35.   **Entity:** bears the meaning set forth in Bankruptcy Code § 101(15).

**1.36.**  **Estate:** the estate created for the Debtor in the Chapter 11 Case under Bankruptcy Code § 541.

**1.37.**  **Exculpated Parties:** collectively, (a) the Debtor, (b) the Reorganized Debtor, (c) the Subchapter V Trustee, (d) FELLC, and (e) with respect to each of the foregoing Entities in clauses (a), (b), and (d), each of their respective predecessors, successors and assigns, and current and former stockholders, members, limited partners, general partners, equity holders, affiliates and its and their subsidiaries, principals, partners, parents, equity holders, members, employees, agents, officers, directors, managers, trustees, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants.

**1.38.**  **Executory Contract:** a contract to which the Debtor is a party that is subject to assumption or rejection under Bankruptcy Code §§ 365 or 1123 of the Bankruptcy Code.

**1.39.**  **Federal Judgment Rate:** the federal judgment rate in effect as of the Petition Date, compounded annually.

**1.40.**  **FELLC:** Flix Entertainment, LLC, a Texas limited liability company.

**1.41.**  **FF&E:** the Debtor's furniture, fixtures, and equipment.

**1.42.**  **Force Majeure Period:**  March 23, 2020, to July 1, 2021, the period during which governmental orders issued in New Mexico prevented or restricted theater operations.

**1.43.**  **General Unsecured Claim:** a Claim that is not secured by property of the Debtor and is not entitled to priority under 11 U.S.C. §§ 503 or 507.

**1.44.**  **Governmental Unit:** bears the meaning set forth in Bankruptcy Code § 101(27) of the Bankruptcy Code.

**1.45.**  **Holdco:** Flix Brewhouse Holdco LLC, a Texas limited liability company, and 100% owner of the Debtor. Holdco is a wholly owned subsidiary of FELLC.

**1.46.**  **Holdco Loan:** an installment loan dated March 13, 2020, in the original amount of $6,607,143 for which Flix Brewhouse Holdco LLC, the Debtor's direct parent, the Debtor, and three affiliates are liable. The Holdco Loan is secured by substantially all of the Debtor's assets as well as those of Holdco and the three non-debtor affiliates.

**1.47.**  **Impaired:** with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Bankruptcy Code § 1124.

**1.48.**  **Interest:** any equity security (as defined by Bankruptcy Code § 101(16)) in the Debtor.

**1.49.**  **Interim Compensation Order:** the order of the Bankruptcy Court in the Chapter 11 Case at docket number 63, establishing procedures for interim compensation and reimbursement of expenses for professionals.

1.50. **Judicial Code:** title 28 of the United States Code, 28 U.S.C. §§ 1-4001, as amended from time to time and as applicable to the Chapter 11 Case.

1.51. **Landlord:** Village @ La Orilla, LLC, a New Mexico limited liability company, serving as Landlord under the Lease.

1.52. **Landlord Claim Litigation:** the adversary proceeding styled *Flix Brewhouse NM LLC and Flix Entertainment LLC v. Village @ La Orilla, LLC*, proceeding before the Bankruptcy Court under adversary proceeding number 21-03029 (HCM).

1.53. **Landlord Proof of Claim:** proof of claim number 7 in the Claims Register, as amended from time to time, filed by the Landlord.

1.54. **Lease:** the Commercial Real Estate Lease dated August 18, 2015, between the Debtor as tenant and Village @ La Orilla, LLC as landlord.

1.55. **Lien:** Bears the meaning set forth in Bankruptcy Code § 101(37).

1.56. **Other Priority Claim:** means any claim entitle to priority in right of payment under Bankruptcy Code § 507(a), other than (a) an Administrative Claim; or (b) a Priority Tax Claim, to the extent such Claim has not already been paid during the Chapter 11 Case.

1.57. **Pandemic: t**he COVID-19 global pandemic.

1.58. **Person**: an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity.

1.59. **Petition Date:** September 10, 2021, the date the Chapter 11 Case was filed.

1.60. **Plan:** this plan, as it may be amended or supplemented from time to time, including all exhibits, schedules, supplements, appendices, annexes, and attachments thereto.

1.61. **Premises:** the Debtor's operating location under the Lease, in the Village @ La Orilla shopping center in Albuquerque, New Mexico

1.62. **Priority Claims:** any Claim entitled to priority under Bankruptcy Code § 507, including all Priority Tax Claims and Other Priority Claims.

1.63. **Priority Tax Claim:** any Claim for taxes entitled to priority under Bankruptcy Code § 507.

1.64. **Pro Rata:** the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

**1.65.** **Professional:** an Entity employed under an order of the Bankruptcy Court and to be compensated for services rendered before or on the Confirmation Date, under Bankruptcy Code §§ 327, 328, 329, 330, or 331. For the avoidance of doubt, the Subchapter V Trustee is considered a Professional for purposes of this Plan.

**1.66.** **Professional Fee Claim:** any Administrative Claim for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been previously paid.

**1.67.** **Projected Disposable Income:** the net income available for distribution to creditors through the Plan after payment of all operating expenses, including but not limited to taxes, capital expenditures, and reasonable operational reserves.

**1.68.** **Reorganized Debtor:** the Debtor, or any successor to the Debtor by merger, consolidation, or otherwise, on or after the Effective Date.

**1.69.** **Rights of Action**: any and all claims, debts, demands, rights, defenses, actions, Causes of Action, suits, contracts, agreements, obligations, accounts, defenses, offsets, powers, privileges, licenses and franchises of any kind or character whatsoever, known, or unknown, suspected, or unsuspected, whether arising before, on, or after the Petition Date, in contract or in tort, at law or in equity, or under any other theory of law, of the Debtor or its Estate.

**1.70.** **SBA Loan:** an SBA-backed secured loan through Comerica dated December 30, 2016, in the original amount of $2,195,000. The Debtor is the sole obligor on the SBA Loan.

**1.71.** **Schedules:** the Debtor's schedules of assets and liabilities and statement of financial affairs filed by the Debtor in the Chapter 11 Case, as the same may have been amended, modified, or supplemented from time to time.

**1.72.** **Subchapter V Trustee (or "Trustee"):** Michael Colvard, the statutorily appointed trustee in the Chapter 11 Case, appointed under Bankruptcy Code § 1183(a), or any successor Trustee.

**1.73.** **Unexpired Lease:** a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under Bankruptcy Code §§ 365 or 1123.

**1.74.** **Unimpaired (or not Impaired):** with respect to a Class of Claims or Interests, a Class of Claims or Interests that are unimpaired within the meaning of Bankruptcy Code § 1124, including through payment in full in Cash.

## ARTICLE 2
### HISTORY OF DEBTOR'S BUSINESS OPERATIONS

### 2.1 Nature of & History of Debtor's Business

The Debtor's business is located at the Premises in the Village @ La Orilla shopping center in Albuquerque, New Mexico, where it conducts business as "Flix Brewhouse" and operates a 37,557 square foot entertainment and dining venue that includes an eight-screen luxury dine-in movie theater showing first-run films with a total of 923 theater seats, a lounge, and a craft microbrewery producing Flix Brewhouse-branded beer. The lobby bar/lounge has 21 bar stools and an additional 64 seats in adjacent tables and banquettes, which are primarily used by guests prior to entering the movie auditorium for waiting, meeting up or consuming a beverage (which can be carried into the auditorium). The Debtor does not operate a separate dining room, nor does it have an outdoor patio or any other indoor or outdoor dining space at the Premises.

### 2.2 Legal Structure & Ownership

The Debtor is a New Mexico limited liability company and a wholly owned subsidiary of Holdco, which in turn is a wholly owned subsidiary of FELLC. FELLC in turn owns eight other direct and indirect subsidiary entities that operate existing Flix Brewhouse locations across the Southwestern and Midwestern United States.

The Debtor began operating at the Premises in November 2016 under the terms of that its Lease with the Landlord. Between November 2016 and the end of 2019, 140 and 190 New Mexicans were active team members working at the Debtor's location. In 2019, nearly $2.5 million of payroll and benefits were paid out on account of this single location. The Debtor does not directly employ anyone. Rather, all staff are employed by CBI, which provides staff members to the Debtor under a Staffing Services Agreement dated December 29, 2017.

The Debtor is also a party to various licensing and rental agreements with major movie studios and providers of certain items of machinery and equipment and is the holder of various licenses and permits issued by the State of New Mexico and Bernalillo County such as alcoholic beverage licenses and a small brewer's permit. The brewery is also subject to licensing and bonding requirements from the Federal Tax and Trade Bureau.

The Debtor owns FF&E located at the Premises including, among other things, luxury theater seating, film projectors, screens, sound systems, and brewery and restaurant equipment. Comerica has a properly perfected first priority lien on all of the Debtor's FF&E.

### 2.3 Events Leading to the Chapter 11 Case

In March 2020, the effects of the Pandemic, Shutdown Orders (as defined below), and related economic factors prevented the Debtor from operating its business at the Premises.

On March 11, 2020, New Mexico Governor Grisham issued Executive Order 2020-004 declaring a state of emergency in New Mexico, and directing various state agencies to initiate efforts to prevent the spread of COVID-19. On March 19, 2020, the New Mexico Department of Health issued an order restricting the number of individuals allowed to congregate in public and private spaces to ten people in total. On March 23, 2020, the New Mexico Department of Health issued

another order (as amended, and collectively referred to with Executive Order 2020-004 as amended, the "**Shutdown Orders**") requiring the complete shutdown of all non-essential businesses in New Mexico, and further restricting the number of people allowed to gather in the same place to five in total.

As a result of the Shutdown Orders, the Debtor shuttered operations at the Premises on March 16, 2020, and was unable to resume operations for well over a year. During this period, health authorities such as the United States Centers for Disease Control, the World Health Organization and myriad state and local health officials warned consumers to avoid indoor gathering places, particularly places of mass entertainment such as the Premises.

The combination of governmental restrictions and consumer reluctance to attend movie theaters severely depressed the global market for out-of-home motion picture entertainment, which in turn resulted in widespread and potentially permanent disruption to the supply of major motion pictures that have traditionally been first-released in movie theaters.

The Shutdown Orders remained in effect through July 1, 2021, and the Debtor's business remained closed through the Petition Date. In the days leading up to the Petition Date, however, the outlook for the Debtor's business improved dramatically following the introduction and distribution of vaccines to the public and easing of governmental and economic constraints on the Debtor's business made a reopening at the Premises possible.

On the Petition Date, the Debtor publicly announced its intention to reopen at the Premises on September 30, 2021.

### 2.4    Key Events in the Chapter 11 Case

The Debtor voluntarily filed the Chapter 11 Case on the Petition Date, September 10, 2021. (Dkt. 1). The Debtor elected for the Chapter 11 Case to proceed under Subchapter V of Chapter 11. During the Chapter 11 Case, the Debtor continued (and continues) to manage its financial affairs as debtor in possession. The U.S. Trustee appointed Michael Colvard to serve as the Subchapter V Trustee in the Chapter 11 Case. (Dkt. 4).

The Debtor timely filed its Schedules in the Chapter 11 Case on September 24, 2021. (Dkts. 50, 51). The Bar Date in the Chapter 11 Case occurred on November 19, 2021. In total, 7 proofs of claims were filed on the Claims Register before the Bar Date.

#### *(1) DIP Financing*

The Debtor obtained a postpetition DIP Loan from FELLC, authorized on a final basis by the Bankruptcy Court (Dkt. 73) under which the Debtor has the authority to borrow up to $1.5 million. The Debtor has drawn approximately $350,000 through the date of this Plan, and given the seasonally strong movie schedule at the end of 2021, the Debtor does not anticipate any additional draws in 2021, but may need access to additional cash from the DIP Loan in the first quarter of 2022, with an expected seasonal slowdowns in movie attendance, and any potential increased constraints on operations resulting from the continuing Pandemic.

### *(2) Postpetition Operations & Prospects for Reorganizing at the Premises*

With the protection of the automatic stay in place and its ability to reopen, the Debtor reopened its business at the Premises on September 30, 2021.

Due to the Pandemic's continuing effects on the Debtor's industry, audiences have not yet returned to movie theaters in pre-Pandemic numbers.

Additionally, as a result of the Pandemic changes to movie distribution patterns accelerated and have likely changed permanently; the supply of content that plays exclusively in theaters as "first run" has greatly diminished following the mixed success of "day and date" distribution models in 2020 and 2021, eroding box office gross sales figures for out-of-home film exhibition.

Regardless of these headwinds, the Debtor's business model as an affordable luxury dine-in cinema with the ability to "eventize" the moviegoing experience and providing unique consumer experiences like an award-winning on-site brewery, positions it to survive long-term as a Reorganized Debtor under the terms of the Plan, provided that the result of the Landlord Claim Litigation facilitates its ability to reorganize.

### *(3) Landlord Claim Litigation*

The Debtor, along with co-plaintiff FELLC, filed an adversary complaint initiating the Claim Litigation against the Landlord on December 1, 2021, to object to the Landlord Proof of Claim, which the Landlord filed on the Bar Date, alleging amounts owed to it by the Debtor under the Lease totaling $1,482,563.40 for alleged prepetition rent, inclusive of certain interest, fees, and other expenses.

The Debtor disputes the allegations and amounts asserted in the Landlord Proof of Claim, requiring it to bring the Landlord Claim Litigation. In the Landlord Claim Litigation, the Debtor seeks, among other things, to:

(a) challenge the validity, extent, and priority of the Landlord's alleged security interest in the Debtor's FF&E because—by its own admission in the Landlord Proof of Claim among other things—the Landlord does not hold a perfected security interest in the Debtor's assets;

(b) avoid under Bankruptcy Code § 545(3) any statutory lien for rent the Landlord alleges it holds under New Mexico law;

(c) object to the Proof of Claim and any cure amounts the Debtor may actually owe to the Landlord under the doctrines of force majeure, impossibility and impracticability of performance, and frustration of purpose brought about by the Pandemic, the Shutdown Orders, and related economic conditions; and

As co-plaintiff in the Landlord Claim Litigation, FELLC seeks declaratory relief as to its underlying guaranty liability relating to the Lease.

The feasibility of the Debtor's Plan assumes that the Debtor receives a favorable outcome in the Landlord Claim Litigation. The Debtor believes that the amount legally owed to the Landlord for

prepetition amounts – in other words, the amount that would be owed as a Cure Claim upon assumption of the Lease – should total approximately $294,246.17 (the "**Landlord Cure Amount**"), which is comprised of (a) approximately $49,321.12 for rent owed for the Force Majeure Period, (b) prepetition utilities estimated at $40,000, (c) $227,425.35 (comprising rent due for the months of July through September 2021), less (d) $22,500 in good faith interim rent payments paid to the Landlord prepetition. The Landlord Cure Amount shall be reduced by amounts paid to the Landlord from the Chapter 11 Estate of Allan L. Reagan on account of the Landlord's allowed proof of claim in that case (see Section 3(C) of this Plan).

## 2.5    Debtor's Assets

The Debtor's assets are comprised primarily of FF&E located at the Premises, and cash on hand at any given time.

## 2.6    Debtor's Liabilities

The Debtor's liabilities (including contingent liabilities) include (a) approximately $350,000 (secured) owed to FELLC under the DIP Loan as of the filing of this Plan, (b) approximately $1,451,000 (secured) owed to Comerica on account of the SBA Loan, (c) approximately $5,607,263.68 of contingent liability owed to Holdco on account of the Debtor's guaranty of the Holdco Loan, (d) approximately $19,017 in estimated Secured Tax Claims, and (e) approximately $90,495 owed to General Unsecured Creditors. In addition, the Debtor's books and records indicate unsecured obligations to affiliates totaling $7,828,636. Finally, as of the Effective Date, the Debtor will have certain administrative liabilities accrued in this Case to the extent they remain unpaid.

### ARTICLE 3
### THE PLAN

The Debtor's Plan must describe how its Creditors will be paid and how the Plan will be implemented to make those payments.

Certain Claims are entitled to specific treatment under the Bankruptcy Code and are not placed in a Class. for purpose of payment. For example, Administrative Expenses and Priority Tax Claims are not classified.

As required by the Bankruptcy Code, the Plan places Claims and Interests in various classes and describes the treatment each Class will receive. The Plan also states whether each Class of Claims or Interests is impaired or unimpaired. A Claim or equity Interest can be impaired if the Plan alters the legal, equitable, or contractual rights to which the Claimants are otherwise entitled. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote.

An impaired Class accepts the Plan when (a) more than one-half (1/2) in number, and (b) at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a Class of Interest holders accepts the Plan when at least two-thirds (2/3) in amount

of the allowed equity Interest holders that actually vote, vote in favor of the Plan. A Class that is not impaired is deemed to accept the Plan.

## 3.1    Unclassified Claims

Certain types of Claims are automatically entitled to specific treatment under the Bankruptcy Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may object, however, if in their view their treatment under the Plan does not comply with that required by the Bankruptcy Code. As such, the Plan does not place the following Claims in any Class:

### (A)  Administrative Expenses

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

(1) If the Debtor trades in the ordinary course of business following its filing of the Chapter 11 Case, Creditors are entitled to be paid in full for the goods or services provided. This ordinary trade debt incurred by the Debtor after the Petition Date will be paid on an ongoing basis in accordance with the ordinary business practices and terms between the Debtor and its trade Creditors.

(2) If the Debtor received goods it has purchased in the ordinary course of business within twenty (20) days before the Petition Date, the value of the goods received is an Administrative Expense.

Administrative Expenses also include any postpetition fees and expenses allowed to professionals, including the allowed claim of the Subchapter V Trustee for fees and/or reimbursements, and for attorneys and accountants employed upon Bankruptcy Court authority to render services to the Debtor during the course of the Chapter 11 Case. These fees and expenses must be noticed to Creditors and approved by the Bankruptcy Court prior to payment.

### (B)  Priority Tax Claims

Priority Tax Claims are unsecured income, employment, and other taxes described by Bankruptcy Code § 507(a)(8). Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding five (5) years from the order of relief.

14

**3.2      Classes of Claims & Equity Interests**

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

**(A) Class 1: Comerica Bank**

The rights of Comerica remain unchanged under the Plan. The Holdco Loan and SBA Loan shall each remain unmodified. Comerica shall continue to receive its contract payments from the Debtor on the SBA Loan and the Holdco Loan pursuant to the applicable loan documents for those obligations.

Class 1 is Unimpaired.

**(B)      Class 2: Secured Tax Claims**

Holders of Secured Tax Claims (such as certain taxes owed to the state of New Mexico which attach to Debtor property until paid) will receive cash in an amount to pay 100% of their Allowed Claims on the Effective Date of the Plan, or, for a disputed Claim, within thirty (30) days of the Claim being Allowed, whichever occurs later.

Class 2 is Unimpaired.

**(C) Class 3: Other Priority Claims**

Holders of Other Priority Claims will receive cash in an amount to pay 100% of their Allowed Claims on the Effective Date of the Plan, or, for a disputed Claim, within thirty (30) days of the Claim being Allowed, whichever occurs later.

Class 3 is Unimpaired.

**(D) Class 4: General Unsecured Claims**

Holders of Allowed General Unsecured Claims will receive cash in an amount to pay 100% of their Allowed Claims, without interest, within thirty (30) days of the occurrence of the Effective Date of the Plan or, for a disputed Claim, within thirty (30) days of the Claim being Allowed, whichever occurs later.

Class 4 is Unimpaired.

**(E) Class 5: Affiliate Claims**

Holders of Affiliate Claims will not receive a distribution under the Plan. Affiliate Claims shall be reinstated on the Effective Date and remain obligations of the Debtor after the Effective Date.

Class 5 is Unimpaired.

**(F) Class 6: Equity Interests**

Holders of Interests in the Debtor shall retain 100% of their Interests.

Class 6 is Unimpaired.

3.3 **Procedure for Resolving Disputed Claims**

(A) **Objections to Claims.** The Debtor shall be responsible for preparing, filing, and prosecuting objections to Claims or motions to estimate Claims for allowance. Objections to Claims may be filed with the Bankruptcy Court and served upon each holder of the Claims to which objections are filed not later than ninety (90) days after the Confirmation Date, unless such time is extended by order of the Bankruptcy Court. No distribution will be made on account of a Disputed Claim unless and until such Claim is allowed.

(B) **Prosecution of Objections.** The Debtor will have the power and authority to settle and compromise a Disputed Claim with Bankruptcy Court approval and compliance with Rule 9019 of the Bankruptcy Rules.

(C) **Payments by Third Parties.** Any Claim will be deemed reduced and/or disallowed, as applicable, without a claim objection having to be filed by the Debtor and without any further notice, action or order of the Bankruptcy Court, to the extent that the holder of such Claim (a) receives cumulative payment in full of the Claim from the Debtor, a person or entity that is not the Debtor, or any combination thereof; (b) receives partial payment on account of such Claim from a person or entity which is not the Debtor; or (c) receives a written notice of such proposed reduction or disallowance from the Debtor in accordance with the provisions of this paragraph, and does not object in writing to the proposed reduction or disallowance set forth in such notice within twenty-one (21) days from service of such notice. To the extent a holder of a Claim receives, on account of such Claim, both a distribution under the Plan and a payment from a person or entity that is not the Debtor on account of such Claim, and together such payments exceed the actual amount of the Claim as an Allowed Claim, the Debtor may serve a notice of such excess or duplicative payment on the holder of the Claim, and such holder must, within twenty-one (21) days of receipt thereof, either (i) repay or return such excess amounts to the Debtor (for purposes of this provision, the total amount owed on account of such Claim shall be without regard to any limitations in the Bankruptcy Code or statutory cap, such as, for example, the cap provided for under Bankruptcy Code § 502(b)(6)); or (ii) file and serve on the Debtor an objection setting forth the basis upon which the holder of such Claim should not be required to return the amounts set forth in the notice received by such holder. This Section shall not limit, reduce, alter, or otherwise modify in any way any obligations of any non-Debtor obligor or guarantor with respect to any payment assurances arising under or relating to Executory Contracts and Unexpired Leases, whether or not rejected by the Debtor under this Plan.

3.4 **Treatment of Executory Contracts & Unexpired Leases**

All Executory Contracts or Unexpired Leases, not otherwise explicitly assumed or rejected by the Debtor prior to confirmation of the Plan, are rejected by the Debtor under the Plan as of the Effective Date. The Debtor will file a list of contracts to be assumed prior to the Confirmation Hearing.

A proof of a claim arising from the rejection of an Executory Contract or Unexpired Lease must be filed no later than thirty (30) days after the date of the Confirmation Order. The Debtor may file an objection to such Claim at any time.

### 3.5    Post-Confirmation Management

Except as otherwise provided in the Plan, the Reorganized Debtor will continue to exist after the Effective Date as a corporate entity, with all of the powers of a limited liability company under applicable law in the jurisdiction in which the Debtor is incorporated. Existing management shall continue in their roles as of the Effective Date.

### 3.6    Tax Consequences of the Plan

Creditors should consult with their tax advisor regarding the tax consequence of the treatment of their claims under this Plan.

### 3.7    Post-Effective Date Rights & Operations

The Reorganized Debtor, among other things, may: (a) sell, lease, license, and/or dispose of any of its assets in the ordinary course of business (other than the Rights of Action); (b) institute, prosecute, settle, compromise, abandon, or release all Rights of Action; (c) prosecute objections to Claims filed against the Debtor; (d) make distributions to the holders of Allowed Claims according to the Plan; (e) perform administrative services related to the implementation of the Plan, including filing or recording such documents as are necessary or in furtherance of the release of any Lien, to the extent such Lien is released or deemed released in or under the Plan; and (f) employ attorneys and other professionals to assist in fulfilling the Reorganized Debtor's obligations under the Plan and the Bankruptcy Code.

### 3.8    Preservation of Rights of Action

The Reorganized Debtor shall retain and shall have the exclusive right to enforce any and all Rights of Action. Unless any Claims against a Person are expressly waived, relinquished, exculpated, released, compromised, transferred or settled in the Plan or by a Final Order, in accordance with Bankruptcy Code § 1123(b), the Reorganized Debtor shall retain and may enforce all rights to commence and pursue any and all Retained Rights of Action, whether arising before or after the Petition Date, and the Reorganized Debtor's rights to commence, prosecute, or settle such Rights of Action shall be preserved regardless of the occurrence of the Effective Date.

ARTICLE 4
EFFECTIVENESS OF PLAN

### 4.1    Conditions Precedent

The Effective Date will not occur until the following conditions (the "**Conditions Precedent**") have been satisfied or waived:

(a) the Bankruptcy Court shall have entered a Confirmation Order that is in form and substance satisfactory to the Debtor;

(b) the Confirmation Order becomes a Final Order; and

(c) no stay of the Confirmation Order is in effect.

The Debtor may waive any of the Conditions precedent in its sole discretion, and such waiver will not require any notice, Bankruptcy Court order, or any further action by the Debtor.

## 4.2    Effective Date

The Plan will not be consummated or become binding unless and until the Effective Date occurs. The Effective Date will be the date selected by the Debtor which is a business day after the entry of the Confirmation Order on which: (a) no stay of the Confirmation Order is in effect, and (b) all Conditions Precedent have been satisfied, unless waived by the Debtor. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

The Debtor shall file notice of the occurrence of the Effective Date on the docket in the Chapter 11 Case no later than seven (7) days after the Effective Date.

ARTICLE 5

FEASIBILITY OF PLAN AND MEANS FOR IMPLEMENTING PLAN

The Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

## 5.1    Ability to Fund Plan

The Debtor will have enough cash on hand on the Effective Date, and as required thereafter, to pay all the Claims and expenses that are entitled to be paid on and after the Effective Date. The sources of the cash available on the Effective Date shall be cash on hand, as well as cash available under the DIP Loan. FELLC has agreed to convert amounts due to it under the DIP Loan into preferred equity in the Reorganized Debtor.

## 5.2    Ability to Make Future Plan Payments & Operate Without Further Reorganization

The Debtor is proposing to pay all Allowed Claims, including Administrative Claims, Priority Claims, and Cure Claims, in full within thirty (30) days of (a) the Effective Date; or (b) the date on which such Claim is Allowed, and to continue meeting its contractual obligations to Comerica under the Holdco and SBA Loan documents. In other words, the Debtor does not propose to pay creditors over the course of a three-year plan, but shortly following the Plan becoming effective. For that reason, the Debtor has not included a projected payment plan proposing to pay the Debtor's projected disposable income to Creditors on account of Claims.

## 5.3    Means of Implementing the Plan and Payments to Creditors

The Debtor shall make all distributions under the Plan.

Upon the Effective Date, or within thirty (30) days after a Claim is Allowed, the Debtor shall pay in full all Administrative Claims, Priority Tax Claims, Other Tax Claims, and General Unsecured Claims, as well as any Allowed Cure Claims due upon assumption of an Executory Contract, including any cure payment made to the Landlord.

### 5.4    Treatment of Lease

The Debtor shall assume the Lease on the Effective Date in concert with making any cure payment owed the Landlord. The cure amount paid to the Landlord will includes all amounts due under applicable law under the Lease during the Force Majeure Period and any other unpaid prepetition amounts under the Lease following the Force Majeure Period. Amounts that were due under the Lease during the Force Majeure Period that are excluded from the cure payment to the Landlord shall be paid when and to the extent the Court deems the Debtor to be obligated upon the conclusion of the Landlord Claim Litigation.

### ARTICLE 5
### LIQUIDATION ANALYSIS

To confirm the Plan, the Bankruptcy Court must find that all Creditors and equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and equity Interest holders would receive in a Chapter 7 liquidation. A liquidation analysis is attached to this Plan as **Exhibit A**.

As indicated on Exhibit A, in the event that the Debtor is liquidated and its assets (primarily FF&E) are sold, all of the proceeds of such a sale would be paid to Comerica. Other Creditors and Interest holders would receive no distribution. The Debtor submits that the Plan satisfies the requirement that creditors receive more than they would in a liquidation.

### ARTICLE 6
### INJUNCTION, DISCHARGE, AND RELATED MATTERS

### 6.1    Compromise and Settlement of Claims, Interests and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits and consideration provided by the Debtor pursuant to the Plan, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete settlement, compromise, and release, effective as of the Effective Date, of Claims, Interests, and Rights of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date.

### 6.2    Discharge

**If the Plan is confirmed under § 1191(a)**, on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before Confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in Bankruptcy Code § 1141(d); or

**If the Plan is confirmed under § 1191(b)**, as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the Bankruptcy Court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the Bankruptcy Court shall grant the Debtor a discharge of all debts provided in Bankruptcy Code § 1141(d)(1)(A), and all other debts allowed under Bankruptcy Code § 503 and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first three (3) years of the Plan, or

such other time not to exceed five (5) years fixed by the Bankruptcy Court; or

(2) if applicable, of the kind specified in Bankruptcy Code § 523(a).

## 6.3    Release of Liens

Upon satisfaction in full of the amounts payable under the Plan to holders of any Allowed Secured Claim, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate or the Reorganized Debtor securing such Claim shall be fully released, settled, and compromised and all rights, titles, and interests of any holder of such mortgages, deeds of trust, Liens, pledges, or other security interests against said property shall revert to the Reorganized Debtor.

## 6.4    Subordinated Claims

The allowance, classification, and treatment of all Allowed Claims and Interests and the respective distributions and treatments under the Plan account for the applicable relative priorities and rights of the Claims and Interests in each Class, whether arising under general principles of equitable subordination, Bankruptcy Code § 510(b) of the Bankruptcy Code, or otherwise. Pursuant to Bankruptcy Code § 510, the Debtor reserves the right for the Debtor or the Reorganized Debtor, as applicable, to seek a reclassification of any Claim in accordance with any contractual, legal, or equitable subordination relating thereto.

## 6.5    Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, ALL ENTITIES WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS, INTERESTS, LIENS, RIGHTS OF ACTION, OR LIABILITIES THAT ARE SUBJECT TO COMPROMISE, SETTLEMENT, OR RELEASE PURSUANT TO THE TERMS OF THE PLAN OR ARE OTHERWISE STAYED OR TERMINATED PURSUANT TO THE TERMS OF THE PLAN, ARE PERMANENTLY ENJOINED AND PRECLUDED, FROM AND AFTER THE EFFECTIVE DATE, FROM:

(A) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND, INCLUDING ON ACCOUNT OF ANY CLAIMS, INTERESTS, RIGHTS OF ACTION, OR LIABILITIES THAT HAVE BEEN COMPROMISED OR SETTLED AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY RELEASED, SETTLED, OR COMPROMISED CLAIMS, INTERESTS, RIGHTS OF ACTION, OR LIABILITIES;

(B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, OR COMPROMISED CLAIMS, INTERESTS, LIENS, RIGHTS OF ACTION, OR LIABILITIES;

(C) CREATING, PERFECTING, OR ENFORCING ANY LIEN, CLAIM, OR ENCUMBRANCE OF ANY KIND AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY

SUCH RELEASED, SETTLED, OR COMPROMISED CLAIMS, INTERESTS, RIGHTS OF ACTION, OR LIABILITIES;

(D) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY

KIND AGAINST ANY OBLIGATION DUE FROM THE DEBTOR OR THE REORGANIZED DEBTOR ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, OR COMPROMISED CLAIMS, INTERESTS, RIGHTS OF ACTION, OR LIABILITIES UNLESS SUCH ENTITY HAS TIMELY ASSERTED SUCH SETOFF OR SUBROGATION RIGHT PRIOR TO CONFIRMATION IN A DOCUMENT FILED WITH THE BANKRUPTCY COURT EXPLICITLY PRESERVING SUCH SETOFF OR SUBROGATION; AND

(E) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND AGAINST THE DEBTOR OR THE REORGANIZED DEBTOR ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH RELEASED, SETTLED, OR COMPROMISED CLAIMS, INTERESTS, RIGHTS OF ACTION, OR LIABILITIES RELEASED, SETTLED, OR COMPROMISED PURSUANT TO THE PLAN;

*PROVIDED THAT* NOTHING CONTAINED IN THE PLAN SHALL BE CONSTRUED TO PREVENT ANY ENTITY FROM DEFENDING AGAINST CLAIMS OBJECTIONS OR COLLECTION ACTIONS WHETHER BY ASSERTING A RIGHT OF SETOFF OR OTHERWISE TO THE EXTENT PERMITTED BY LAW.

## 6.6    Setoff

Except as otherwise provided in the Plan, prior to the Effective Date, the Debtor, and on and after the Effective Date, the Reorganized Debtor, pursuant to the Bankruptcy Code (including Bankruptcy Code §§ 553 and 558), applicable non-bankruptcy law, or as may be agreed to by the holder of a Claim or Interest, may set off against any Allowed Claim or Interest on account of any proof of Claim or proof of Interest or other pleading filed with respect thereto prior to the combined hearing and the distributions to be made pursuant to the Plan on account of such Allowed Claim (before any distribution is made on account of such Allowed Claim), any claims, rights, and Rights of Action of any nature that the Debtor's Estate may hold against the holder of such Allowed Claim, to the extent such claims, rights, or Rights of Action against such holder have not been otherwise compromised or settled on or prior to the Effective Date (whether pursuant to the Plan or otherwise); provided that neither the failure to effect such a setoff nor the allowance of any Claim pursuant to the Plan shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such claims, rights, and Rights of Action that the Debtor's Estate may possess against such holder. In no event shall any holder of Claims be entitled to set off any Claim against any claim, right, or Cause of Action of the Debtor's Estate unless such holder has timely filed a proof of Claim with the Bankruptcy Court expressly preserving such setoff; provided that nothing in the Plan shall prejudice or be deemed to have prejudiced the Debtor's or the Reorganized Debtor's right to assert that any holder's setoff rights were required to have been asserted by motion or pleading filed with the Bankruptcy Court prior to the Effective Date.

## ARTICLE 7
## GENERAL PROVISIONS

### 7.1    Title to Assets

**If the Plan is confirmed under § 1191(a)**, except as otherwise provided in the Plan or in the Confirmation Order, (i) Confirmation of the Plan vests all of the property of the Estate in the Reorganized Debtor, and (ii) after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Interests of Creditors, equity security holders, and of general partners in the Debtor.

**If the Plan is confirmed under § 1191(b)**, property of the Estate includes, in addition to the property specified in Bankruptcy Code § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the Debtor, after the date of commencement of the Chapter 11 Case but before the Chapter 11 Case is closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code, whichever occurs first. Except as provided in Bankruptcy Code § 1185, the Plan, or the Confirmation Order, the Debtor shall remain in possession of all property of the Estate.

### 7.2    Binding Effect

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

### 7.3    Severability

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

### 7.4    Retention of Jurisdiction by Bankruptcy Court

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters: (a) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (b) to rule on any modification of the Plan proposed under § 1193; (c) to hear and allow all applications for compensation to professionals and other Administrative Expenses; (d) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of Executory Contracts or Unexpired Leases; and (e) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

### 7.5    Captions & Headings

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

### 7.6    Modifications to Plan

The Debtor may modify the Plan at any time before Confirmation of the Plan pursuant to Bankruptcy Code § 1193(a). If the Plan is modified, the Bankruptcy Court may require additional items, including revoting on the Plan, before Confirmation.

If the Plan is confirmed under Bankruptcy Code § 1191(a), the Debtor may also seek to modify the Plan at any time after Confirmation only if (a) the Plan has not been substantially consummated; and (b) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing.

If the Plan is confirmed under Bankruptcy Code § 1191(b), the Debtor may seek to modify the Plan at any time only if (a) it is within three (3) years of the Confirmation Date, or such longer time not to exceed five (5) years, as fixed by the Bankruptcy Court; and (b) the Bankruptcy Court authorizes the proposed modifications after notice and a hearing

### 7.7     Exculpation

***None of the Exculpated Parties shall have or incur any liability for any act or omission in connection with, related to, or arising out of, the Chapter 11 Case, the formulation, preparation, dissemination, implementation, confirmation, or approval of this Plan, the administration of this Plan, or any contract, instrument, release, or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in this Plan; provided, however, that the foregoing provisions shall not affect the liability of any Person that would result solely from any such act or omission to the extent that act or omission is determined by a Final Order of the Bankruptcy Court to have constituted willful misconduct or gross negligence or breach of fiduciary duty. The provisions of this Section 7.7 shall not limit the Debtor's obligations under this Plan, and regardless of the provisions of this Section or any other provision of this Plan, nothing in this Plan, or any order confirming this Plan shall affect any causes of action, claims, or counterclaims that may be asserted in connection with an objection to a Claim that has not been Allowed, in each case as determined by a court of competent jurisdiction.***

### 7.8    FELLC Release

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including FELLC's contributions to funding of Plan payments as provided in Section 5.1of this Plan, FELLC shall be released from its guaranty of any amounts owed to the Landlord under the Lease to the extent such amounts were due and owing prior to the Petition Date.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing release by the Landlord of FELLC's obligations described herein, and shall further constitute the Bankruptcy Court's finding that the foregoing release by the Landlord is: (1) in exchange for the good and valuable consideration provided by FELLC; (2) in the best interests of the Debtor and all holders of claims and interests; (3) fair, equitable and reasonable; (4) given and made after due notice and opportunity for hearing; and (5) a bar to the Landlord asserting any claim or cause of action released herein.

### 7.9    Final Decree

Once the Estate has been fully administered, as provided in Bankruptcy Rule 3022, the Debtor, or such other party as the Bankruptcy Court may designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close the Chapter 11 Case. Alternatively, the Bankruptcy Court may enter such a final decree on its own motion.

**7.10 Miscellaneous Provisions**

**(A) Rules of Interpretation.** For purposes of this Plan:

(1) in the appropriate context, each term, whether stated in the singular or the plural, includes both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender include the masculine, feminine, and the neuter gender;

(2) unless specified otherwise, any reference to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document must be substantially in that form or substantially on those terms and conditions;

(3) unless specified otherwise, any reference to an existing document, schedule, or exhibit, whether filed or not, means that document, schedule, or exhibit as it may thereafter be amended, modified, or supplemented;

(4) any reference to an Entity as a holder of a Claim or Interest includes that Entity's successors and assigns;

(5) unless specified otherwise, all references to "Articles" are references to Articles of this Plan or to this Plan;

(6) unless specified otherwise, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;

(7) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

(8) unless specified otherwise, the rules of construction set forth in § 102 of the Bankruptcy Code apply;

(9) all references to docket numbers of documents filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system;

(10) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated;

(11) any immaterial effectuating provisions may be interpreted by the Debtor or the Reorganized Debtor in such a manner that is consistent with the overall purpose and intent of the Plan, all without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity; and

(12) except as specifically provided in this Plan to the contrary, references in the Plan to the Debtor or to the Reorganized Debtor means the Debtor and the Reorganized Debtor, as applicable, to the extent context requires.

**(B)  Computation of Time.** Unless specifically stated otherwise, the provisions of Bankruptcy Rule 9006(a) apply in computing any period of time prescribed or allowed by this Plan. If the date on which a transaction may occur under the Plan will occur on a day that is not a Business Day, then such transaction will instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

**(C)  Governing Law.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless specifically stated otherwise, the laws of the State of Texas, without giving effect to conflicts of law principles, governs the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement controls); provided that corporate governance matters relating to the Debtor or the Reorganized Debtor, as applicable, will be governed by the laws of the state of incorporation or formation of the Debtor or Reorganized Debtor, as applicable.

**(D)  Controlling Document.** In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order controls.

## Article 8
## Attachments

The following documents accompany the Plan:

(a)  Liquidation Analysis

Date:  December 9, 2021

*Flix Brewhouse NM, LLC*

By:  /s/ Rachael L. Smiley
       One of its Attorneys

Rachael Smiley (State Bar No. 24066158)
**Ferguson Braswell Fraser Kubasta PC**
2500 Dallas Pkwy
Plano, TX 75093
Telephone:  972.378.9111
Facsimile:  972.378.9115
rsmiley@fbfk.law

*Co-Counsel to the Debtor*

By:  /s/ Jonathan Friedland
       One of its Attorneys

Jonathan Friedland (*admitted pro hac vice*)
Jack O'Connor (*admitted pro hac vice*)
Mark Melickian (*admitted pro hac vice*)
**Sugar Felsenthal Grais & Helsinger LLP**
30 N. LaSalle St., Ste. 3000
Chicago, Illinois 60602
Telephone:  312.704.9400
Facsimile:  312.704.9400
jfriedland@sfgh.com
joconnor@sfgh.com
mmelickian@sfgh.com

*Co-Counsel to the Debtor*

**APPENDIX 1**
**FREQUENTLY ASKED QUESTIONS**

**What is the Debtor attempting to do in chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims against a debtor will be treated.

**Why am I receiving this Plan?** In order to confirm a plan of reorganization, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How do I determine which Class I am in?** To determine the Class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The Table of Contents will direct you to the treatment provided to the Class in which you are grouped. The pertinent section of the Plan dealing with that Class will explain, among other things, who is in that Class, what is the size of the Class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Article 3 of the Plan lists all classes of claimants and their types of claims.

**Why is confirmation of a plan of reorganization important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors as proposed in the Plan while the Debtor remains in bankruptcy.

**What is necessary to confirm a plan of reorganization?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two-thirds in total dollar amount and a majority in number of claims actually voting in each voting Class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the plan does not discriminate unfairly, and is fair and equitable, with respect to each Class of claims or interests that is impaired under, and has not accepted, the plan.

**Am I entitled to vote on the Plan?** Any creditor of the Debtor whose claim is *impaired* under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How do I determine whether I am in an Impaired Class?** Article 3 of the Plan identifies the classes of creditors whose claims are impaired. If your claim is impaired, your vote will be considered by the Bankruptcy Court.

**When is the Deadline by which I need to return my ballot?** The Plan is being distributed to all claim holders for their review, consideration and approval. The deadline by which ballots must be returned is _____, 202[__]. Ballots should be mailed to the following address:

| FERGUSON BRASWELL FRASER KUBASTA PC | SUGAR FELSENTHAL GRAIS & HELSINGER LLP |
|---|---|
| Attn: Rachael Smiley | Attn: Jonathan Friedland, Jack O'Connor |
| 2500 Dallas Pkwy | 30 N. LaSalle St., Ste. 3000 |
| Plano, TX 75093 | Chicago, Illinois 60602 |
| rsmiley@fbfk.law | jfriedland@sfgh.com |
| | joconnor@sfgh.com |

**How do I determine when and how much I will be paid?** In Article 3.2 of the Plan, the Debtor has provided summaries of what it anticipates each Class of creditors will receive under the Plan.

**Exhibit A**

**Flix Brewhouse NM, LLC**
Liquidation Analysis

| | Notes | Net Book Value (a) | Recovery % | | Proceeds ($) | |
|---|---|---|---|---|---|---|
| | | | Low | High | Low | High |
| Cash & Equivalents | | $ 734,430 | 100 % | 100 % | $ 734,430 | $ 734,430 |
| Accounts Receivable, Intercompany | | 46,804 | - % | 10 % | - | 4,680 |
| Inventory - Food, Beverage, Brewery | | 42,551 | 10 % | 20 % | 4,255 | 8,510 |
| Inventory - Supplies | | 8,007 | 20 % | 50 % | 1,601 | 4,004 |
| Prepaid Expenses | | 31,753 | 30 % | 50 % | 9,526 | 15,876 |
| PP&E, Leasehold Improvements | (b) | 3,003,822 | - % | - % | - | - |
| PP&E, Theater Equipment | (c) | 337,073 | 60 % | 80 % | 202,244 | 269,659 |
| PP&E, Brewery Equipment | | 181,539 | 20 % | 30 % | 36,308 | 54,462 |
| PP&E, Kitchen & Bar Equipment | | 242,385 | 10 % | 25 % | 24,239 | 60,596 |
| PP&E, Furnishing & Fixtures | (d) | 399,060 | 60 % | 80 % | 239,436 | 319,248 |
| PP&E, Other Fixed Assets | (e) | 24,762 | 5 % | 15 % | 1,238 | 3,714 |
| Other Assets | (f) | 206,122 | - % | - % | - | - |
| **Total Assets** | | $ 5,258,308 | | | $ 1,253,276 | $ 1,475,179 |
| **Administrative Expenses & Liquidation Costs** | | | | | | |
| Chapter 11 Professional Fees | | | | | (150,000.0) | (75,000.0) |
| Chapter 7 Trustee Fees | (g) | | | | (61,000.0) | (68,000.0) |
| Chapter 7 Professionals / Liquidators | (h) | | | | (125,000.0) | (148,000.0) |
| Other Administrative Expenses | (i) | | | | (580,000.0) | (430,000.0) |
| **Total Liquidation Costs** | | | | | $ (916,000) | $ (721,000) |
| **Funds Available to Distribute to Creditors** | | | | | $ 337,276 | $ 754,179 |

| | Notes | Estimated Allowed Claim | Estimated Recovery % | | Estimated Recovery $ | |
|---|---|---|---|---|---|---|
| | | | Low | High | Low | High |
| **Secured Creditors** | | | | | | |
| Comerica Bank | (j) | 7,068,330 | 4.8 % | 10.7 % | 337,276 | 754,179 |
| Secured Tax Claim | (k) | 19,017 | - % | - % | | |
| FELLC - DIP Loan | (l) | 350,000 | - % | - % | - | - |
| Village @ La Orilla LLC | (m) | 1,482,563 | - % | - % | | |
| **Total** | | $ 8,919,910 | | | $ 337,276 | $ 754,179 |
| **General Unsecured Creditors** | | | | | | |
| General Unsecured Creditors | (n) | 90,495 | - % | - % | - | - |
| Affiliated Creditors | (o) | 7,828,636 | - % | - % | - | - |
| **Total** | | $ 7,919,131 | | | $ - | $ - |

**NOTES**
(a) Net Book Value based upon preliminary balance sheet from November 30, 2021.
(b) No liquidation value attributed to Leasehold Improvements
(c) Includes projectors, screens, 8 theater finish out items, moving image technologies, and audio visual equipment
(d) Includes office furniture, rolling chairs for theaters, decorative millwork, and signage
(e) Includes software, computer equipment, alarm system, and artwork
(f) Includes lease security deposit, lease/loan acquisition costs
(g) Based upon statutory compensation percentages determined by amounts distributed
(h) Estimated 10% average commission to retain liquidators to sell assets
(i) Estimate for wind-down expenses, post-petition payables, and other non-professional fee administrative expenses
(j) Consists of approx. $1,451,000 owed to Comerica on account of the SBA loan and approx. $5,607,263.68 of
contingent liability owed to Holdco on account of Debtor's guaranty of the Holdco Loan
(k) Ad valorem taxes for business personal property
(l) Outstanding balance as of 11/30/2021
(m) Creditor asserted a secured claim on its submitted proof of claim. Debtor disputes this characterization. However, Debtor
has included this claim as asserted for the purposes of this analysis. Debtor reserves all rights to object to claim in whole or part.
(n) Estimate based upon review of Debtor's Schedules of Assets and Liabilities and proofs of claim filed as of 12/8/2021
(o) Scheduled amounts owing to Flix Entertainment LLC and Cinema Breweries Inc